UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
DR. CHRISTOPHER JOHNSON,

                               Plaintiff,                  MEMORANDUM & ORDER

                                                          No. 24-CV-8791-JRC

        -against-

THE BROOKDALE HOSPITAL MEDICAL
CENTER, DR. RAVI KOTHURU, DR. NARENDRA
KUMTHEKHAR, GARY STEPHENS, and DR.
ANTHONY TORTOLANI,

                               Defendants.
--------------------------------------------------------------------

JAMES R. CHO, United States Magistrate Judge:

     Plaintiff Dr. Christopher Johnson ("plaintiff" or "Dr. Johnson") commenced this action

against defendant the Brookdale Hospital Medical Center ("Brookdale" or "the hospital"), Dr.

Ravi Kothuru (Dr. Kothuru"), Dr. Narendra Kumthekhar ("Dr. Kumthekhar"), Gary Stephens

("Stephens"), and Dr. Anthony Tortolani ("Dr. Tortolani") (collectively, "defendants"), for

violations of 42 U.S.C. § 1981 ("§ 1981"), the New York State Human Rights Law

("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and tortious interference

with an advantageous relationship. *See generally* Compl., Dkt. 1. Now pending before this

Court is defendants' motion to dismiss this action in its entirety pursuant to Rules 12(b)(1) and

(6) of the Federal Rules of Civil Procedure. *See* Mot. to Dismiss, Dkt. 42.

     For the reasons set forth below, the Court grants defendants' motion to dismiss.

**Background**

I.      **Factual Background**

The Court accepts as true the following factual allegations, taken primarily from the Complaint, and draws all reasonable inferences in plaintiff's favor. *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 374 (2d Cir. 2024).

Defendant Brookdale is a not-for-profit corporation organized under the laws of the State of New York with business operations at 1 Brookdale Plaza in Brooklyn, New York. Compl. ¶ 7. Defendants Dr. Kothuru, Dr. Kumthekhar, and Dr. Tortolani are individuals residing in New York and who work at Brookdale in Brooklyn. *Id.* ¶¶ 8–10. Defendant Stephens is the Chief Marketing Officer of One Brooklyn Health and an individual residing in New York, working in the Brooklyn location of Brookdale. *Id.* ¶ 11.

Plaintiff Dr. Johnson is a Board-Certified plastic surgeon licensed in California and New York. *Id.* ¶ 13. In January 2016, plaintiff received privileges to practice at Kingsbrook Jewish Hospital, the predecessor of Brookdale, under Chairman Dr. William Lois. *Id.* ¶ 14. One Brooklyn Health "bought out" Kingsbrook Jewish Hospital in 2020. *Id.* ¶ 20. Dr. Kumthekhar then became Chairman. *Id.* Defendants explain that Brookdale is a hospital comprised of three campuses that merged with Interfaith Medical Center and Kingsbrook Jewish Medical Center as of January 1, 2021, to operate as an integrated hospital network. Defendants' Mem. of Law in Supp. of their Mot. to Dismiss ("Defs.' Mem."), Dkt. 43, at 1. In December 2021, after the Kingsbrook Jewish Medical Center campus ceased allowing inpatient surgical procedures at its facilities, plaintiff applied for and received privileges to admit his patients for inpatient surgical procedures at the Brookdale campus, pursuant to Brookdale's Medical Staff Bylaws. *Id.*

2

Plaintiff "experienced race and sexual orientation discrimination" while working at the hospital. Compl. ¶ 16. Plaintiff points to a series of instances of discrimination, as detailed below. Around August 1, 2017, plaintiff was not permitted into the hospital and asked to show identification. *Id.* No white doctors were treated similarly, and plaintiff complained in an email to Assistant Director Griffin. *Id.* Dr. Kumthekhar, who became plaintiff's supervisor around June 2018, never referred patients to plaintiff, never "scrubbed with him," and never had a meeting with plaintiff by himself. *Id.* ¶ 17. In July 2019, a white ophthalmologist, Dr. Berg, assaulted a "clerk for OR" and plaintiff. *Id.* ¶ 18. The hospital did not accept payment for cosmetic surgeries that plaintiff brought in. *Id.* ¶ 19.

On May 20, 2020, Dr. Kumthekhar examined a patient and claimed he did not have a hernia. *Id.* ¶ 21. When "scrubbing," a hernia was discovered and Dr. Kumthekhar "hated [p]laintiff for finding this." *Id.* Dr. Kumthekhar then "caused [p]laintiff to be investigated for insurance fraud and reviewed 10 hernia patients for which he was fully exonerated." *Id.* ¶ 22. Dr. Kumthekhar also ensured the gender affirming surgery plaintiff brought in was denied when a Black transgender male patient was denied the opportunity to pay out of pocket for pectoralis implants. *Id.* ¶ 23.

Plaintiff was forced to purchase and transport daily liposuction equipment, tattoo machines, and fat transfer cannula equipment, while other doctors were given better accommodations and equipment on site. *Id.* ¶ 26.

In October 2020, defendant Dr. Tortolani "intervened" and claimed Asian employees were making accusations against plaintiff. *Id.* ¶ 27. Dr. Kumthekhar solicited these accusations. *Id.* Dr. Kumthekhar and Dr. Kothuru were made uncomfortable by Dr. Johnson saying that his child is half ethnically Indian and raised by gay parents. *Id.* ¶ 28. On February 8, 2021, plaintiff

3

asked Dr. Kumthekhar, copying Dr. Tortolani and others, "to treat him fairly like other surgeons and noted specific instances of liposuction where reimbursement is an issue." *Id.* ¶ 29. Defendants "made sure anesthesia turnover time for [p]laintiff was much higher to reduce his number of surgeries." *Id.* ¶ 30.

In October 2021, Dr. Kumthekhar accused plaintiff of performing fraudulent hernia surgeries. *Id.* ¶ 31. Dr. Tortolani said Dr. Kumthekhar was mistaken but still discussed transferring plaintiff. *Id.* Before plaintiff "integrated" in January 2022, plaintiff received a letter from Dr. Tortolani notifying him of an "outside investigation." *Id.* ¶ 32.

On March 11, 2022, Dr. Kumthekhar spoke negatively about plaintiff to Dr. Kothuru at a holiday party. *Id.* ¶ 33.

On April 19, 2022, plaintiff met with Julie Schwartz, allegedly conducting a neutral investigation, and mentioned "the discrimination case" regarding the Black transgender male patient who was denied the opportunity to pay out of pocket for pectoralis implants. *Id.* ¶ 34. Plaintiff was not shown an investigation report, and no instruction of non-retaliation was given to the witnesses who participated in the investigation. *Id.* ¶ 35.

On April 22, 2023, plaintiff made a submission to the New York State Division of Human Rights concerning Brookdale's treatment of the transgender patient and other racial and sexual orientation discrimination. *Id.* ¶ 36.

On May 19, 2022, plaintiff "reported" that Dr. Kothuru threatened that two people would lose their job if they refused to make false allegations against plaintiff. *Id.* ¶ 37.

On May 31, 2022, plaintiff wrote to LaRay Brown, Chief Executive Officer of One Brooklyn Health, reporting a nurse had "attacked him for being Black and gay, he suffered false

4

complaints, and allegations of fraudulent billing for repair of hernias in women undergoing abdominoplasty." *Id.* ¶¶ 38–39.

On June 6, 2022, Brookdale's outside counsel, Leonard Rosenberg, "engaged in a settlement that Dr. Johnson and [Brookdale] would withdraw complaints against each other." *Id.* ¶ 41.

On August 11, 2022, plaintiff reported to LaRay Brown that on July 22, 2022, Dr. Kothuru "became aggressive and threw an instrument at the only other Black gay person in the OR." *Id.* ¶ 42. On August 24, 2022, plaintiff was not invited to mandatory departmental meetings. *Id.* ¶ 43.

On October 26, 2022, plaintiff "reported homophobia" to Dr. Sandra Scott, the interim Chief Executive Officer of Brookdale. *Id.* ¶ 44. Plaintiff mentioned that Bonita Hardwick, Dr. Kumthekhar, Dr. Jenneelyn Johnson, Leonard Rosenberg, Reginald Bullock, and Dr. Kothuru all discriminated against him. *Id.* ¶ 45.

On November 3, 2022, plaintiff met with Dr. Kothuru. *Id.* ¶ 46. LaRay Brown and Dr. Sandra Scott had promised that Dr. Kothuru would apologize to plaintiff for his "insulting false scheme that [Dr. Kothuru] helped promote accusing [p]laintiff of insurance fraud due to discrimination." *Id.* On December 15, 2022, Dr. Sandra Scott and LaRay Brown asked plaintiff to help with "LGBTQI issues" in the hospital. *Id.* ¶ 48. LaRay Brown was later fired on January 10, 2024. *Id.* ¶ 60.

On April 17, 2023, plaintiff was "reappointed to medical staff." *Id.* ¶ 49. On April 26, 2023, Dr. Guny Gabriel, a Black surgeon, was terminated. *Id.* ¶ 50.

In Spring 2023, defendant Gary Stephens called plaintiff into an office and said, "When I say jump, you say how high?" *Id.* ¶ 51.

5

On June 25, 2023 and July 10, 2023, the Chief Executive Officer asked plaintiff, plaintiff's child, and plaintiff's husband to walk in the hospital's Gay Pride parade. *Id.* ¶ 52. Plaintiff's husband was to carry the banner with Dr. Sandra Scott. *Id.* Dr. Kothuru "was forced to march and angry." *Id.*

On July 17, 2023, Gary Stephens initiated a peer review investigation about "wrong side surgery." *Id.* ¶ 53. Stephens "had people on payroll for no show jobs and was receiving $10–30k per patient with his charity in Guyana, Caribbean Heart Institute," and took "male Indian and Middle Eastern physicians," and went "to Guyana while on paid leave from One Brooklyn Health." *Id.* ¶ 54.

Plaintiff fell ill in August 2023. *Id.* ¶ 55. On August 22, 2023, plaintiff's husband sent a text message to Dr. Sandra Scott, informing her that plaintiff had a liver biopsy that revealed cancer cells. *Id.* ¶ 56.

On September 20, 2023, plaintiff was notified of the suspension of his privileges pending investigation. *Id.* ¶ 57. On September 22, 2023, plaintiff was called into a meeting "for suspension" while he was "suffering from enterococcal line sepsis and admitted to Brookdale." *Id.* ¶ 58. Plaintiff was told of three "complaints—one being he had to lie down in OR bed, and that he exposed [his] torso to [an] Islamic female resident." *Id.* At the end of October 2023, plaintiff underwent liver embolization for stage IV carcinoid cancer. *Id.* ¶ 59.

In April 2024, plaintiff was notified of false charges against him relating to failure to diagnose, abusive conduct toward staff, and unprofessional conduct. *Id.* ¶ 61. These allegations took place after plaintiff reported his own internal complaints and "outside agency filings." *Id.* Plaintiff "lost Heal[]ogics opportunity" in May 2024 "due to [] false allegations and has not been

able to perform surgeries without privileges at a hospital." *Id.* ¶ 62.  Plaintiff is "suffering from deep depression, cancer, post-traumatic stress and sleep deprivation." *Id.* ¶ 63.

## II.        Procedural History

On December 24, 2024, plaintiff commenced this action alleging violations of 42 U.S.C. § 1981, the NYSHRL, the NYCHRL, and tortious interference with an advantageous relationship.  *See* Compl.  On April 28, 2025, defendants filed a pre-motion letter expressing their intent to file a motion to dismiss.  Dkt. 16.  On April 29, 2025, the Honorable Natasha C. Merle was assigned as the presiding judge.  On April 30, 2025, plaintiff responded to defendants' pre-motion letter.  Dkt. 17.  On May 2, 2025, defendants filed a motion for a pre-motion conference before Judge Merle.  Dkt. 18.  On May 9, 2025, plaintiff responded to defendants' motion for pre-motion conference.  Dkt. 19.  On May 19, 2025, Judge Merle granted in part and denied in part defendants' motion for pre-motion conference.  *See* Order dated May 19, 2025. The Court set a briefing schedule on defendants' anticipated motion to dismiss.  *Id.*  The Court entered a modified briefing schedule several times at the request of the parties while they discussed settlement.  *See* Orders dated June 25, 2025; Aug. 8, 2025; Oct. 1, 2025; Oct. 28, 2025.

The parties consented to the undersigned's jurisdiction in this case on November 20, 2025.  Dkt. 39.  The undersigned was reassigned as the presiding judge on November 24, 2025. On December 18, 2025, the parties filed their fully-briefed motion to dismiss.  *See* Dkt. 42.

## Discussion

## I.        Standard of Review

"In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court construes the complaint liberally, 'accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor.'"  *Zhong v.*

7

*Aug. Aug. Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, to survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter," which if "accepted as true, . . . state[s] a claim to relief that is plausible on its face." *Id.* (internal quotations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In other words, "[t]he Court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently 'raise a right to relief above the speculative level.'" *Zhong*, 498 F. Supp. at 628 (quoting *Twombly*, 550 U.S. at 5).

## II.    Analysis

### A.    Section 1981

Plaintiff alleges that (1) defendants discriminated against him by subjecting him to hostile, discriminatory treatment and offensive, racially motivated comments and conduct; and (2) defendants retaliated against him by subjecting him to further discrimination and harassment, refusing to reprimand the discriminatory behavior, and ultimately terminating his privileges at Brookdale, all in violation of § 1981.  Compl. ¶¶ 66, 72.

### 1.    Statute of Limitations

Plaintiff's § 1981 discrimination claims are subject to a four-year statute of limitations. *See Burgis v. Dep't of Sanitation City of N.Y.*, No. 13-CV-1011, 2014 WL 1303447, at *4 (S.D.N.Y. Mar. 31, 2014) ("Although § 1981 does not contain a statute of limitations, the Supreme Court has held that the four-year federal 'catch-all' statute of limitations applies." (citing *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 382 (2004)).

8

Defendants claim that each of the incidents allegedly occurring prior to December 24, 2020, are time-barred under the four-year statute of limitations period for § 1981 claims.  Defs.' Mem. at 18; *see* Compl. ¶¶ 16–28.  Plaintiff argues that otherwise time-barred acts should be considered an ongoing course of discrimination that constitute a "continuing violation," for the purpose of the timeliness of his claims.  Pl.'s Opp. to Defs.' Mot. to Dismiss ("Pl.'s Opp."), Dkt. 46, at 19–20; *see Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001) (continuing violation doctrine allows plaintiffs to challenge an ongoing practice of discrimination if at least one episode falls within the statute of limitations).  Plaintiff also notes that courts have been hesitant to make determinations of where a course of conduct constitutes a continuing violation pre-discovery.  Pl.'s Opp. at 20–22.

Even assuming the continuing violation doctrine applies to plaintiff's § 1981 claims, his claims must fail because he fails to state a claim under § 1981, as explained below.

## 2.    Contractual Relationship Under § 1981

"To establish a claim under 42 U.S.C. § 1981, a plaintiff must allege facts supporting that (1) the plaintiff is a member of a racial minority; (2) defendant's intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities," such as the making and enforcement of contracts.  *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 848 (2d Cir. 2022) (internal quotations omitted).  "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship."  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

9

Plaintiff's Complaint satisfies the first requirement for a § 1981 claim. *See* Compl. ¶¶ 39, 42. As to the second requirement, that plaintiff must allege defendants' intent to discriminate on the basis of race, plaintiff's allegations that defendants targeted him, and not non-Black doctors he asserts were similarly situated, is sufficient to survive a motion to dismiss. *See Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) ("An inference of discrimination can arise from . . . the more favorable treatment of employees not in the protected group." (internal quotations omitted)); *see also Buon v. Spindler*, 65 F.4th 64, 83 (2d Cir. 2023) ("[W]e have cautioned courts to be mindful of the elusive nature of intentional discrimination when making a plausibility determination at the motion-to-dismiss phase because discrimination claims implicate an employer's usually unstated intent and state of mind and therefore rarely is there direct, smoking gun, evidence of discrimination." (internal quotations omitted)). Plaintiff's § 1981 claims therefore depend on whether he has adequately alleged that the discrimination related to the making and enforcement of a contract under which he has rights. *See Patterson v. County of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004) (Section 1981 "outlaws discrimination with respect to . . . a contractual relationship").

Plaintiff's Complaint does not provide a detailed description of the employment relationship between himself and Brookdale. Plaintiff asserts that he "received privileges at Kingsbrook Jewish Hospital (predecessor of Brookdale)" in January 2016. Compl. ¶ 14. Then, "[o]n September 20, 2023, [p]laintiff was notified of suspension of privileges pending investigation." *Id.* ¶ 57. Plaintiff alleges that the individual defendants knew of plaintiff's "contract and advantageous privileges relationship" with Brookdale. *Id.* ¶ 95.

Defendants assert that the granting of hospital privileges at Brookdale is governed by Brookdale's bylaws and not a separate written agreement. Defs.' Mem. at 11. Defendants also

10

submit Brookdale's bylaws, under which plaintiff's privileges are determined.  *See* Decl. of Gary McCollin ("McCollin Decl."), Ex. 1 ("Bylaws"), Dkt. 45-1.[1]

Plaintiff alleges that he need not plead a contractual relationship because § 1981 offers relief when racial discrimination blocks the creation of a contractual relationship.  Pl.'s Opp. at 8 (citing *Domino's Pizza*, 546 U.S. at 470).  Plaintiff does not allege that the creation of any additional contractual relationship was blocked, only that plaintiff's pre-existing privileges to practice at Brookdale (created under the hospital bylaws) were suspended after the alleged discrimination.  Compl. ¶ 57.  The Court, therefore, evaluates whether these privileges create a sufficient contractual relationship for plaintiff's § 1981 claims.

As explained by this Court in the recent decision of *Hutchinson v. Northwell Health, Inc.*, No. 23-CV-2116, 2024 WL 1308691 (E.D.N.Y. Mar. 27, 2024), courts in New York have found that hospital bylaws only rarely create contractual rights.  *See Hutchinson v. Northwell Health, Inc.*, No. 23-CV-2116, 2024 WL 1308691, at *3 (E.D.N.Y. Mar. 27, 2024) (collecting cases).  Defendants rely on this Court's holding in *Hutchinson* for their argument that plaintiff's § 1981 claims must be dismissed for his failure to plead the necessary contractual relationship.  Defs.' Mem. at 10–12.

Plaintiff does not respond to recent case law holding that a plaintiff may not state a claim under § 1981 where the contractual relationship alleged is a doctor's privileges awarded by a

---

[1] Defendants contend that it is appropriate for the Court to consider the bylaws as they are integral to plaintiff's claims and plaintiff had notice of the bylaws.  Defs.' Mem. at 4 n.1; *see Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (courts may consider documents of which a plaintiff had notice and are integral to a plaintiff's claim in deciding a motion to dismiss).  The Court agrees, as plaintiff's privileges to practice at Brookdale, granted pursuant to the bylaws, are relied on extensively in the Complaint.  *See* Compl. ¶¶ 1, 14–15, 57, 62, 72, 95; *see also Pucilowski v. Spotify USA, Inc.*, No. 21-CV-1653, 2022 WL 836797, at *3 (S.D.N.Y. Mar. 21, 2022) ("For a document to be integral to a complaint, the plaintiff must have [i] actual notice of the extraneous information and [ii] relied upon the document in framing the complaint." (internal quotations omitted)).  Plaintiff does not dispute defendants' reliance on or submission of the bylaws.  *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) ("[I]t must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document" and that "there exist no material disputed issues of fact regarding the relevance of the document.").

hospital's bylaws.  Instead, plaintiff cites to *Mahmud v. Kaufmann*, 454 F. Supp. 2d 150 (S.D.N.Y. 2006), and *Hamad v. Nassau County Med. Ctr.*, 191 F. Supp. 2d 286 (E.D.N.Y. 2000), for his argument that a doctor may adequately plead a contractual relationship under § 1981 by alleging the termination of hospital privileges.  Pl.'s Opp. at 8–9; *see Mahmud*, 454 F. Supp. 2d at 158 ("At this stage, alleging the denial of hospital privileges is a sufficient contractual relationship to maintain a § 1981 claim."); *Hamad,* 191 F. Supp. 2d at 301 (finding that plaintiff doctor "adequately plead the essential elements of a § 1981 cause of action" by alleging that "his termination and denial of privileges were predicated upon a racially discriminatory animus").

The Court finds the recent reasoning in *Hutchinson*, rather than *Mahmud* or *Hamad*, persuasive and controlling.  Like the plaintiff in *Hutchinson*, here, Dr. Johnson had no employment contract with the hospital at which he exercised his privileges.  Instead, the hospital bylaws allowed the hospital to offer "privileges," allowing physicians to practice there.  *See* McCollin Decl. at ¶ 4.  Like the plaintiff in *Hutchinson*, Dr. Johnson alleges that the hospital at which he practiced, motivated by discrimination and in violation of § 1981, wrongly terminated previously provided privileges.  *Hutchinson*, 2024 WL 1308691 at *2.  In determining whether privileges formed under hospital bylaws create a contractual right, this Court in *Hutchinson* examined New York State case law, which governs the formation of contracts.  *See Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 27 (2d Cir. 2002) ("[A] court should generally apply state-law principles to the issue of contract formation.").  After determining "hospital bylaws will only rarely create contractual rights" under New York law, this Court in *Hutchinson* held that since "the bylaws would be unable to support a breach of contract claim, they also cannot give rise to § 1981 claims."  *Hutchinson*, 2024 WL 1308691, at *4.

12

Here, as in *Hutchinson*, Brookdale's bylaws do not fall under any exception to the general rule that hospital bylaws do not create a contractual right.  Brookdale's bylaws do not contain "clear language" that create a right to "relief to restore wrongfully revoked practicing privileges."  *Id.* at *3.  Like the bylaws at issue in *Hutchinson*, Brookdale's bylaws only contain a procedural process by which a decision adverse to a practitioner or applicant's clinical privileges may be reviewed.  *See* Bylaws Art. XIII ("Hearing and Appellate Review"); *see also Hutchinson*, 2024 WL 1308691, at *3 (a hospital's hearing procedures are "unlikely [to have been] intended by anyone to create a monetary claim").  Further, when applying for appointment to the "Medical Staff," or "Adjunct Staff," a process that must precede the awarding of clinical privileges, applicants must "[r]elease[] from any liability the Hospital and its representatives for their permissible acts performed in connection with evaluation of the Applicant and his/her credentials."  Bylaws Art. V, § 3(B)(1)(d).  Thus, as in *Hutchinson*, it is implausible that bylaws containing an explicit clause releasing the hospital from liability were intended to permit civil liability.  *See Hutchinson*, 2024 WL 1308691, at *3 ("[N]othing in [the hospital] bylaws suggest[] they are the rare variety intended to create an enforceable contract; instead, these bylaws are analogous to those found insufficient to establish a right to damages [by the New York Court of Appeals].").

Moreover, this Court noted in *Hutchinson* that "no court applying New York law has faced this exact issue."  *Id.*  The Court finds unavailing plaintiff's citation to *Johnson v. Nyack Hospital*, 954 F. Supp. 717, 719 (S.D.N.Y. 1997), a decades-old case which denied a motion to dismiss a § 1981 claim and said in dicta, without explanation, that a physician plaintiff may rely on "the contract implicit in the medical staff relationship with [the] Hospital" in making a § 1981 claim.

13

Plaintiff cites to no recent cases, and the Court finds none, that rely on either *Mahmud* or *Hamad* for the proposition that privileges to practice at a hospital formed under a hospital's bylaws constitute the contractual relationship necessary to state a claim under § 1981. *Mahmud* relies on *Hamad* for its holding that plaintiff sufficiently plead a § 1981 claim, yet *Hamad* predates the New York State Court of Appeals decisions relied on in examining the existence of a contractual relationship in hospital bylaws in *Hutchinson*. *See* Defs.' Reply in Supp. of their Mot. to Dismiss ("Defs.' Reply"), Dkt. 47, at 4. Plaintiff does not allege that any contractual relationship exists other than the allegation that "the denial of hospital privileges is a sufficient contractual relationship to maintain a § 1981 claim," which was directly dispelled in *Hutchinson*.

Plaintiff also attempts to rely on *Bhanusali v. Orange Reg'l Med. Ctr.*, 572 F. App'x 62 (2d Cir. 2014), yet the Second Circuit in *Bhanusali* did not address whether plaintiff's hospital privileges formed under a hospital's bylaws are sufficient to plead a contractual relationship under § 1981. Instead, the Court in *Bhanusali* held that the district court erred in dismissing plaintiff's claims because plaintiff's allegations were sufficient to support an inference of discrimination. *Bhanusali v. Orange Reg'l Med. Ctr.*, 572 F. App'x 62, 63 (2d Cir. 2014).

As such, plaintiff's § 1981 claims must be dismissed.

###    B.    NYSHRL, NYCHRL, and Tortious Interference

Having dismissed plaintiff's only claim under federal law, the Court "declines to exercise supplemental jurisdiction" over plaintiff's state and city law claims. *Cummings v. City of New York*, No. 19-CV-7723, 2021 WL 1664421, at *3 (S.D.N.Y. Apr. 28, 2021); 28 U.S.C. § 1367(c)(3) (a district court "may decline to exercise supplemental jurisdiction" over state law claims "if the district court has dismissed all claims over which it has original jurisdiction"). No "clearly articulated federal interest" remains, and "[t]he Court has not invested the judicial

14

resources necessary to resolve [the] non-federal claims or even determined whether the Complaint adequately pleads them." *Goszczynska v. Arcadia Earth LLC*, 805 F. Supp. 3d 551, 561 (S.D.N.Y. 2025) (internal quotations omitted); *see also TRB Acquisitions LLC v. Yedid*, No. 20-CV-552, 2021 WL 293122, at *2 (S.D.N.Y. Jan. 28, 2021) (after dismissal of federal claim, "the traditional values of judicial economy, convenience, fairness, and comity that the Court must consider [did] not counsel in favor of exercising jurisdiction" (internal quotations omitted)). Accordingly, the Court "dismisses [the state and city law claims] without prejudice to the claims being refiled in a court of competent jurisdiction." *Cummings*, 2021 WL 1664421, at *3; *see Jusino v. Fed. of Catholic Teachers, Inc.*, 54 F.4th 95, 106 (2d Cir. 2022) ("dismissals for lack of subject[-]matter jurisdiction must be without prejudice" (internal quotations omitted)).

### III.    Plaintiff's Request to Amend the Complaint

Plaintiff requests, in a single sentence at the end of his opposition papers, that "Dr. Johnson should be granted the first opportunity to amend his Complaint." Pl.'s Opp. at 22. Federal Rule of Civil Procedure 15 governs a party's request to amend its pleadings. *See* Fed. R. Civ. P. 15. Under Rule 15(a)(1), a party may amend its pleadings once as a matter of course under certain circumstances. *See* Fed. R. Civ. P. 15(a)(1). Because plaintiff's request comes after the deadlines specified in both Rule 15(a)(1)(A) and Rule 15(a)(1)(B), the proposed Amended Complaint may be filed only through Rule 15(a)(2), with either the Court's leave or the other party's written consent. *See* Fed. R. Civ. P. 15(a)(2).

Here, plaintiff's boilerplate request for leave to amend his Complaint does not comply with this district's Local Rules. *See* E.D.N.Y. Loc. Civ. R. 15.1 ("All motions made by a represented party under Fed. R. Civ. P. 15(a)(2) . . . must also include as an exhibit (1) a clean copy of the proposed amended or supplemental pleading; and (2) a version of the proposed

15

pleading that shows . . . all differences from the pleading that it is intended to amend or supplement.").  The Court therefore exercises its discretion to deny this "cursory or boilerplate request[ ] . . . made solely in a memorandum in opposition to a motion to dismiss." *Malin v. XL Capital, Ltd.*, 312 F. App'x 400, 402 (2d Cir. 2009).  However, the Court dismisses plaintiff's claims without prejudice, and, as set forth below, plaintiff may file a properly supported motion for leave to amend within 30 days of entry of this Memorandum & Order.

### Conclusion

For the reasons stated above, the Court grants defendants' motion to dismiss seeking dismissal of this case in its entirety.  Plaintiff may file a motion for leave to amend within 30 days of the date of this Memorandum & Order.  In the event such a motion is filed, the Court will enter a briefing schedule thereon.  If no such motion is filed, the Complaint shall be dismissed.

**SO ORDERED**

Dated: Brooklyn, New York
      July 21, 2026

s/ James R. Cho
James R. Cho
United States Magistrate Judge
